# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0804-17T4

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

P.S.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF B.S.,

     a Minor.

_____

Argued October 11, 2018 – Decided  January 7, 2019

Before Judges Nugent, Reisner and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FG-12-0054-16.

Michael J. Confusione argued the cause for appellant (Hegge & Confusione, LLC, attorneys; Michael J. Confusione, of counsel and on the briefs).

Michael A. Thompson, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Michael A. Thompson, on the brief).

Rachel E. Seidman, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Rachel E. Seidman, on the brief).

PER CURIAM

Defendant, P.S., appeals from a June 29, 2017 guardianship judgment terminating her parental rights to her child, now age four. She contends the Division of Child Protection and Permanency (the Division) failed to prove by clear and convincing evidence that terminating her parental rights was in the child's best interests, the standard codified in N.J.S.A. 30:4C-15.1(a). She also contends the trial court erred by permitting prejudicial hearsay testimony at the guardianship trial and by allowing her to represent herself, even though she had been declared incompetent to stand trial on criminal charges. The Division and the Law Guardian oppose the appeal. We affirm.

The Division became involved with P.S. in April 2014, two days after she gave birth by C-section. P.S. left the hospital at 2:00 a.m. against medical advice

after complaining about the hospital rooms and telling hospital personnel she wanted to get a good night's sleep. Medical personnel reported P.S. was presenting as manic and exhibiting disassociated behavior. They were concerned because her thought process was incoherent, her affect was flat, and she left the hospital without bonding with the newborn and without concern the baby would remain in the hospital. When a Division caseworker interviewed defendant during the afternoon of the day she left the hospital, defendant refused to undergo a psychological evaluation.

One week after the child's birth, the newborn was cleared for discharge. The Division took physical custody of the child, filed a verified complaint for custody under Title 9 and Title 30, and notified defendant of the date, time, and place of the <u>Dodd</u> hearing.[1] Two days later, the court upheld the Division's emergency removal of the child, ordered the Division to maintain care, custody

---

[1] "A '[DODD] removal' refers to the emergency removal of a child . . . without a court order, pursuant to the Dodd Act, which ... is found at N.J.S.A. 9:6–8.21 to –8.82. The Act was authored by former Senate President Frank J. 'Pat' Dodd in 1974." <u>N.J. Div. of Youth & Family Servs. v. N.S.</u>, 412 N.J. Super. 593, 609 n. 2 (App. Div. 2010). When the Division removes a child from a parent's care on an emergent basis, the Family Part must "hold a hearing on the next court day, whereby the safety of the child shall be of paramount concern...." N.J.S.A. 9:6–8.31.

and supervision of the child, ordered supervised visitation, and ordered that defendant undergo a psychological evaluation.

During the next six months, the court dismissed the Title 9 portion of the litigation. The court continued to order, and the Division continued to make available, a variety of services to defendant. The services included supervised visitation through Middlesex County Supervised Visitation, Catholic Charities Therapeutic Visitation, and Rutgers' University Behavioral Health Care — Children At Risk Resources and Intervention Program (CARRI). Defendant was also offered counseling and parenting skills development. Defendant failed to complete any of the programs and services offered to her.

In April and June 2014, defendant was arrested, the first time for a disorderly persons offense, the second time for refusing to allow police to enter her home. On the second occasion, police were responding to the report of a small fire. Following the incident, they took plaintiff to a hospital emergency room due to concerns about her mental condition. She was released.

During this time, defendant also underwent psychological evaluations by Dr. Alan Gordon in April and August, 2014. She underwent a psychiatric evaluation by Dr. Samiris Sostre in April 2015.

A-0804-17T4

Throughout the proceedings, defendant was represented by counsel. That changed in January 2015, when she appeared in court pro se. In April 2015, the Division learned defendant had been arrested in March and charged with simple assault, defiant trespass, obstruction, and resisting arrest. Following her arrest, she was referred for psychiatric screening. Nonetheless, she continued to insist on representing herself.

Due to defendant's non-compliance with treatment and services, the Division requested approval of a permanency plan of termination of parental rights followed by adoption. The court approved the plan in May 2015.

In October 2015, Edison Police arrested defendant and charged her with, among other offenses, aggravated assault, eluding police, and hindering apprehension. She was taken to the county jail and eventually transferred to Anne Klein Forensic Center due to her deteriorating mental health. She remained there at the time of the guardianship trial.

During the next several court proceedings, defendant was represented by counsel. Nonetheless, defendant violated a court order to cooperate in an evaluation by a psychologist, Dr. Karen D. Wells. In March 2016, a month before the guardianship trial, defendant asked that her counsel be relieved and that she be permitted to represent herself. Concerned with her competency, the

5

court ordered a competency evaluation. The court also permitted her attorney to withdraw as counsel.

Dr. Wells determined defendant was competent to proceed with the guardianship trial and represent herself. In her report to the court, Dr. Wells explained:

> [Defendant] possesses: (1) the capacity to appreciate the concerns and matters at hand; (2) the capacity to appreciate the range and nature of possible outcomes/consequences; (3) the capacity to understand the adversary nature of the legal process; (4) the capacity to disclose to counsel facts pertinent to the proceedings at issue; (five) the capacity to manifest appropriate courtroom behavior; and (6) the capacity to testify relevantly. Additionally, she understands that if the court grants the Division's . . . petition to obtain guardianship of [her child, the child] will become eligible for adoption.

Dr. Wells stated that given defendant's "reported psychiatric concerns, behaviors and uncooperative manner with assigned counsel, it is opined that she is limited as it relates to her ability to cooperate and engage in those proceedings without aid, assistance, and the participation of an assigned guardian ad litem to neutrally represent her best interests."

The court followed Dr. Wells' advice and appointed a guardian ad litem, an attorney, for defendant. During a March 2017 proceeding, the guardian ad litem informed the court defendant was capable of representing herself at trial.

6

According to the guardian ad litem, the defendant was aware of her right to either obtain private counsel or apply for assistance from the Public Defender but she insisted on representing herself.

The guardian had discussed the case with defendant and found her to be cooperative, lucid, focused, and articulate. He thought she had the intelligence to represent herself. She understood the complaint's allegations and that she would lose her parental rights if she did not prevail. The guardian noted defendant was very familiar with the facts of the case, had lived it, and thought she could best present her case. The guardian urged defendant to accept the assistance of standby counsel, and he said she was now willing to accept such assistance.

After hearing from the guardian ad litem, the court conducted a lengthy colloquy of defendant, asking questions about her background, her decision to represent herself, her understanding of the issues in the case, her understanding of legal procedure, and her understanding of the role the "standby" attorney would play if the court permitted defendant to represent herself. The court then delivered a comprehensive opinion from the bench in which it determined defendant was competent and capable of representing herself with the assistance of standby counsel as needed. The court appointed counsel to assist defendant.

A-0804-17T4

Before the guardianship trial commenced, the court appointed another guardian ad litem to assist defendant. Standby counsel and the guardian were present throughout the trial.

During the guardianship trial, the Division presented the testimony of a case worker and Dr. Wells. The Division also presented eighteen documentary exhibits exceeding four hundred pages.

Dr. Wells, the only expert witness to testify, relied upon, among other records, the reports of the psychologist and psychiatrist who had examined defendant. Dr. Wells opined that due to "the absence of sound capacity for judgment, decision-making, the ability to engage in cooperative and collaborative efforts with others, to follow through, to take the advice and counsel," defendant's lack of psychological stability hindered her capacity to parent.

Dr. Wells also testified, based on her bonding evaluation of defendant's child and a paternal aunt, the child had bonded with the aunt and considered the aunt a psychological parent. Given these considerations, and also considering the then three-year-old child had been bonding with the aunt for nearly fourteen months, separating the child from the aunt would, in the doctor's opinion, result in the child experiencing regressive behavior similar to that which accompanies

8

a child grieving a lost parent. The child would experience a profound sense of bewilderment. According to the doctor, no clinical evidence suggested defendant would be able to ameliorate the harm to the child caused by separation from the aunt. In the doctor's opinion, adoption of the child by the paternal aunt was clinically supported and in the child's best interests.

Defendant presented more than twenty exhibits and the testimony of one witness, a friend. The witness testified to those qualities a good mother should possess. During the time she had known defendant, she found defendant "seemed very intelligent . . . and interesting to talk with and friendly." The witness also believed defendant to be trustworthy.

Following the guardianship trial, Judge Bruce J. Kaplan issued a comprehensive written decision in which he concluded the Division had clearly and convincingly proved that termination of defendant's rights would best serve the interests of the child. Judge Kaplan methodically analyzed each of the four statutory sections underlying the best interests standard. Following Judge Kaplan's filing of the implementing order, defendant appealed.

On appeal, defendant argues:

I. THE FAMILY JUDGE ERRED IN RULING THAT THE DIVISION OF CHILD PROTECTION AND PERMANENCY HAD PROVEN BY CLEAR AND CONVINCING EVIDENCE ALL FOUR CRITERIA

FOR TERMINATION OF P.S.'S PARENTAL RIGHTS PURSUANT TO N.J.S.A. 30:4C-15.1(A)(1) THROUGH (4).

A.    The family court violated P.S.'s right to assistance of counsel by permitting P.S. to represent herself at the guardianship trial even though P.S. had been deemed incompetent to stand trial in the criminal case pending against her at the same time (plain error; not raised below).

B.    The family judge improperly admitted and relied on hearsay reports and records that the Division did not demonstrate met the admissibility requirements of New Jersey law.

C.    The Division failed to prove harm under prong one by clear and convincing admissible evidence presented at trial.

> 1. The family court said that the Division "established" that B.S. "had been neglected by P.S. as she created a substantial risk of physical injury/environment injurious to health and welfare by virtue of her departure from the hospital against medical advice in the middle of the night, effectively abandoning B.S."

> 2. The court said that "concerns around P.S.'s mental health have persisted since the time of B.S.'s birth."

> 3. The court said P.S.'s "lack of cooperation and inability to take advice meant to protect B.S. from harm was demonstrated repeatedly throughout her visitations."

10

4. The court said that evidence of harm was shown by P.S.'s "current and foreseeable incarceration" which "preclude her from parenting B.S. in any capacity."

D. The Division failed to prove prong two.

E. The Division failed to prove reasonable efforts under prong three.

F. The Division failed to prove that termination would not do more harm than good under prong four.

G. Terminating P.S.'s parental rights for "mental health concerns" without considering the countering expert opinion of psychiatrist Dr. Saraiya failed to ensure a complete and balanced presentation of all relevant and material evidence sufficient to enable the family court to make a sound determination consistent with the child's best interests.

We affirm, substantially for the reasons expressed by Judge Kaplan in his thorough and thoughtful opinion. We add only the following comments.

Our Supreme Court has recently determined that a parent has the right to represent himself or herself in an action to terminate parental rights. N.J. Div. of Child Prot. & Permanency v. R.L.M. & J.J., ___ N.J. ___ (2018) (slip op. at 2). The right is not without limits:

> The parent's right of self-representation, however, is by no means absolute. That right must be exercised in a manner that permits a full and fair adjudication of the dispute and a prompt and equitable permanency determination for the child. The parent must inform the

court of his or her intention to appear pro se in a timely manner, so as to minimize delay of the proceedings. He or she must invoke the right of self-representation clearly and unequivocally. In the event of such an invocation, the court should conduct an inquiry "to ensure the parent understands the nature of the proceeding as well as the problems she may face if she chooses to represent herself." In re Adoption of a Child by J.E.V. and D.G.V., 226 N.J. 90, 114 (2016). The judge should take appropriate steps, which may include the appointment of standby counsel, so that the parent's decision to represent himself or herself does not disrupt the trial.

[Id. at 4].

Here, though the guardianship trial took place before the Supreme Court decided R.L.M. & J.J., Judge Kaplan took the protective measures the Supreme Court would later recommend, including the appointment of standby counsel.

Defendant now claims she should not have been permitted to represent herself because before the guardianship trial began, she had been declared incompetent to stand trial for the pending criminal charges. But defendant has submitted no reports or medical testimony concerning the basis for that determination. Rather, she grounds her argument on remarks the judge made at the inception of the guardianship trial. Those remarks indicated only that at some time defendant had been declared incompetent to stand trial in the criminal matter, apparently because she had stopped taking her medication.

12

Given the safeguards the judge implemented to protect defendant's rights, and based on our consideration of the trial record, we discern no abuse of discretion. See In re Civil Commitment of D.Y., 218 N.J. 359, 376-77 n.5 (2014) (citing State v. Ehrenberg, 284 N.J. Super. 309, 315 (Law Div. 1994) ("When a bona fide doubt is raised as to the competence of a mentally ill defendant to proceed pro se, counsel should be appointed to aid in the competency determination, as well as to assist the defendant in trying the case.")). The judge acted well within his discretion when he struck the delicate and difficult balance of assuring defendant received due process while protecting the child's need for permanency.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0804-17T4